FILED
U.S. DISTRICT COURT
SAV. DIV.

# UNITED STATES DISTRICT COURT

2007 FEB 14 PM 4: 57

# SOUTHERN DISTRICT OF GEORGIA

CLERK_____
SO. DIST. OF GA.

# SAVANNAH DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CR406-313 |
| | ) | |
| OTIS LORENZO SALLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Otis Salley has filed a motion to suppress evidence seized during a search of his vehicle following a traffic stop on August 1, 2006. Doc. 12. Defendant contends that the warrantless search of the vehicle was unlawful because the officer lacked probable cause to make the stop and continued to hold defendant against his will and without just cause after the traffic stop had concluded. The evidence adduced at the evidentiary hearing establishes that both the traffic stop and the brief detention of defendant pending the arrival of a drug dog met constitutional standards. Accordingly, defendant's motion to suppress should be DENIED.

## I.    FACTS

On August 1, 2006, Lieutenant David Blige of the Bryan County Sheriff's Department was working traffic patrol on Interstate 95 when he noticed a gold Chrysler 300 traveling in the middle lane of the south-bound traffic.  The car weaved across the dividing line several times, so Lt. Blige activated his blue lights to stop the car.  The car at first moved into the far left lane before proceeding back across the middle lane, entering the right lane, and then stopping on the right-hand shoulder of the road.  The stop was made at approximately 11:52 p.m.

Lt. Blige approached the car and asked defendant, the driver and sole occupant, to step to the rear of the vehicle with his license and registration.  After defendant exited the vehicle, Lt. Blige detected the strong odor of burnt marijuana on defendant's person.  When asked if he had been smoking marijuana, defendant replied that he did not smoke "that stuff."  Lt. Blige, who noted that defendant was nervous and sweating, then asked defendant to hand over his license and registration. Defendant did not immediately respond and had to be asked again for his paperwork before he complied with the officer's request.

2

Lt. Blige explained that he had stopped defendant for improper lane usage and that he needed to run a check on his license. After determining that the license was valid, Lt. Blige gave defendant a verbal warning and returned his paperwork. As defendant began to walk toward his vehicle, Lt. Blige "called him back" and stated, "I need to ask you a question." Blige explained that drivers on Interstate 95 sometimes transported contraband and asked defendant for consent to search his vehicle. Defendant refused to give consent. Blige then asked defendant if he had any objection to another officer performing "a free air scan" around his vehicle with a drug dog. Defendant consented to this procedure.

Corporal John Meacham, who was located less than a mile away and was already en route,[1] arrived around midnight, which was just eight or nine minutes after the stop began and some two to three minutes after defendant had consented to the dog sniff. When Meacham led his dog, Mirza, around defendant's vehicle, the dog alerted on the rear passenger door. Officers then conducted a search of the car and found a suitcase in

_____

[1] It is common practice for the Bryan County Sheriff's Department to have an officer with a drug dog stationed along the roadway while other officers are conducting traffic patrol.

the trunk.  When Mirza alerted on the locked suitcase, Cpl. Meacham forced the lock and found two kilos of cocaine inside the suitcase.


## II.  ANALYSIS

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United States, 517 U.S. 806, 811 (1996); United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990); Delaware v. Prouse, 440 U.S. 648 (1979).  Lt. Blige testified that he observed defendant's vehicle weave across the lane line several times while driving south on Interstate 95.  Defendant has provided no testimony refuting the government's evidence of his erratic driving.  The Georgia motor vehicle code provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  O.C.G.A. § 40-6-48(1).  "Weaving without reason into nearby lanes violates O.C.G.A. § 40-6-48(1)."  Viau v. State, 579 S.E.2d 52, 55 (Ga. App. 2003).  When Lt. Blige observed defendants'

vehicle weaving in a manner prohibited by Georgia law, he was justified in initiating the traffic stop.

Defendant contends that once Lt. Blige handed him back his license and paperwork and indicated that he was only receiving a verbal warning, the traffic stop had been completed and defendant should have been allowed to leave. Doc. 12. The officer, however, continued to detain defendant though he allegedly lacked any grounds to do so.

Lt. Blige testified that once he smelled the odor of marijuana on defendant, he had no intention of allowing defendant to depart without first having a narcotics dog conduct a free air scan of defendant's vehicle. Nevertheless, Lt. Blige intended to give defendant the impression that this was an ordinary traffic stop and that defendant would be free to leave[2] once the officer had checked his license and issued him a verbal warning for improper lane change. Through this stratagem, Lt. Blige

---

[2]There is some confusion in the record as to whether Lt. Blige ever told defendant that he was "free to leave." Although at one point during cross-examination Blige acknowledged making such a statement to defendant, Blige also testified that he simply gave defendant the impression that he was free to go upon issuing him a verbal warning without ever specifically stating that defendant could leave. But it is immaterial how defendant came to the understanding that the traffic stop had concluded and he was free to go, for as soon as he began to exercise that right by walking away, Lt. Blige made clear that defendant could not break off the encounter and was subject to a continuing seizure. It is the legality of this further detention, which persisted after the traffic stop had ended, that is the focus of the Court's inquiry.

5

hoped to gain defendant's confidence and secure his consent to a search of his vehicle, and he called defendant back for that purpose. The technique and language employed by the officer needs some refinement, however, for when at the conclusion of the traffic stop Lt. Blige "called [defendant] back" and said that he "need[ed]" to ask him a question, a reasonable person would not have felt free to terminate the encounter and ignore the officer but would have felt compelled to remain at the roadside.

While the law is clear that a law enforcement officer does not offend the Constitution simply by enlisting a citizen's cooperation or asking him questions, Florida v. Bostick, 501 U.S. 429, 434 (1991), it must be apparent to "a reasonable person" that his cooperation is being *requested* and not *required*. Id. at 436. Otherwise, the officer has effected a seizure the validity of which must be tested under the Fourth Amendment's reasonableness standard. Under the particular circumstances of this case, a reasonable person would not have felt free to ignore Officer Blige, whose language and manner implied that compliance with his instructions was not a matter of choice. Thus, absent reasonable suspicion or probable cause, the officer was without

authority to further detain defendant once the traffic stop had been completed. See Illinois v. Caballes, 543 U.S. 405, 407-08 (2005) ("[A] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (a traffic stop "may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity."); United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999) (following a traffic stop, "the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'").

The defendant is mistaken, however, in suggesting that Lt. Blige had no basis for continuing to  hold him once he had issued a verbal warning and returned defendant's paperwork.  When defendant exited his vehicle with his paperwork, Officer Blige smelled the strong odor of burnt marijuana on defendant's person.  He also noted that defendant was nervous and sweating and did not immediately respond when asked

7

to hand over his license and paperwork.   These observations furnished the officer with a reasonable suspicion that defendant was engaged in criminal activity.   The officer was therefore entitled to briefly detain defendant in order to confirm or dispel his suspicions.   United States v. Griffin, 109 F.3d 708 (11th Cir. 1997) (officers who smelled strong odor of marijuana during traffic stop and received inconsistent responses from vehicle occupants about their destination had reasonable suspicion of criminal activity warranting an investigatory detention).   Once Lt. Blige detected the odor of marijuana and observed defendant's nervous behavior and possible impairment, he acted reasonably in detaining defendant for a few minutes pending the arrival of a drug dog.   The dog's alert on defendant's vehicle furnished the officers with probable cause to conduct a search of that vehicle, and under the "automobile exception" to the warrant requirement, the officers were entitled to proceed with the search without first seeking a warrant.   United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006).   Thus, given the particular facts of this case, neither the continued detention of defendant nor the search of his vehicle offended the Fourth Amendment.

## III.  CONCLUSION

The initial stop of defendant's vehicle was supported by probable cause to believe that defendant had committed a violation of the Georgia traffic code.  During the course of the lawful traffic stop, the officer developed a reasonable suspicion that defendant was engaged in criminal activity, and he was justified in prolonging the traffic stop pending a further investigation of his suspicions.  The alert by the police dog furnished probable cause to believe that narcotics were concealed within defendant's vehicle.  Given the exigency attendant to a roadside stop, the officers were entitled to search the vehicle on the spot.  As there was no violation of defendant's Fourth Amendment rights, his motion to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this *14th* day of **February, 2007.**

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA